KERRVILLE 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-93-00645-CV








Kerrville State Hospital, Appellant




v.




James O. Clark and Genevie Clark, Appellees








FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT


NO. 91-5525, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING








 In April 1991, appellees James O. Clark and Genevie Clark (the "Clarks") sued
appellant Kerrville State Hospital ("Kerrville") and the Texas Department of Mental Health and
Mental Retardation ("Department") in Travis County for the wrongful death of their daughter,
Rebecca Clark Ligon. Kerrville and the Department filed a motion to transfer venue to Kerr
County in May 1991, which the trial court denied. After a jury verdict finding in favor of the
Clarks, Kerrville and the Department moved for judgment non obstante veredicto ("judgment
n.o.v."). The trial court granted the Department's motion, but denied Kerrville's motion and
rendered judgment for the Clarks as to Kerrville. Kerrville appeals. We will affirm the trial
court's judgment.



BACKGROUND


 The Clarks' daughter, Rebecca Clark Ligon, was the estranged wife of Gary Ligon. 
Gary had a history of mental problems. In April 1989, after threatening Rebecca and resisting
arrest, Gary was taken to Kerrville for treatment, where he remained for approximately one
month. In May 1989, the Kerrville Institutional Review Board determined that Gary was not
manifestly dangerous. A Kerrville psychiatrist recommended to a Kerr County court that Gary
begin an outpatient commitment so that Kerrville could monitor his medication; Gary began the
outpatient commitment pursuant to a court order. On May 22, 1990, he voluntarily checked into
Kerrville for inpatient treatment; Kerrville, however, released Gary at his request on May 24, and
reinstated the outpatient commitment. On June 1, 1990, Gary brutally murdered Rebecca. (1) The
Clarks filed suit against Kerrville and the Department, alleging that Kerrville's negligent release
of Gary proximately caused Rebecca's death.

 The jury found both Kerrville and the Department negligent in Rebecca's death. 
The trial court subsequently granted a judgment n.o.v. for the Department, but rendered judgment
that Kerrville was liable on the Clarks' wrongful death claim. Kerrville appeals by eight points
of error, raising venue, sovereign immunity, duty, and proximate cause issues.



DISCUSSION


Venue

 In Kerrville's first point of error, it contends that the trial court erred in
maintaining venue in Travis County because that decision violated the express terms of the Texas
Tort Claims Act. See Tex. Civ. Prac. & Rem. Code Ann. § 101.102(a) (West 1986 & Supp.
1995). (2) Section 101.102(a) provides that "[a] suit under this chapter shall be brought in state
court in the county in which the cause of action or a part of the cause of action arises." Id. 
Venue may be proper in many counties under the venue rules, and the plaintiff usually has the
right to choose venue. Wilson v. Texas Parks & Wildlife Dep't, 886 S.W.2d 259, 260 (Tex.
1994). If the defendant raises a venue issue, however, the burden is on the plaintiff to show that
venue is maintainable in the county of the plaintiff's choice. Tex. R. Civ. P. 87(2)(a).

 Kerrville argues that venue was proper in Kerr County under the venue provision
of the Tort Claims Act because Kerr County was a "county in which the cause of action or a part
of the cause of action ar[ose]." Tex. Civ. Prac. & Rem. Code Ann. § 101.102(a) (West Supp.
1995). The Clarks agree that the Tort Claims Act controls venue for their claim; however, they
assert that Travis County was also a county of proper venue because their claims against the
Department arose in Travis County. See id. Although Kerrville asserts that the Tort Claims Act's
venue provision is mandatory, the disposition of this issue is not necessary to resolve the
controversy presented here. Because both Travis and Kerr Counties fall within section
101.102(a), we conclude that venue would be proper in either county, regardless of whether the
Act's provision is mandatory or permissive.

 Kerrville alleges, however, that venue was improper in Travis County because the
Clarks failed to assert any claims against the Department that were not excluded from liability
under the express terms of the Texas Tort Claims Act. See Tex. Civ. Prac. & Rem. Code Ann.
§§ 101.021, .056 (West 1986). The Clarks respond that Kerrville failed to specifically deny the
venue facts as alleged, and the trial court therefore was entitled to take the pleaded facts as true. 
Tex. R. Civ. P. 87(2)(b). (3) Although the trial court may have had sufficient grounds on which to
deny the motion to transfer venue at the time of the venue hearing, our review is not limited to
the record evidence at that point in time. The Civil Practices and Remedies Code governs our
review of the venue issue:



On appeal from the trial on the merits, if venue was improper it shall in no event
be harmless error and shall be reversible error. In determining whether venue was
or was not proper, the appellate court shall consider the entire record, including
the trial on the merits.



Tex. Civ. Prac. & Rem. Code Ann. § 15.064(b) (West 1986) (emphasis added). However, if
probative evidence exists to support the trial court's determination, even if the preponderance of
the evidence is to the contrary, we should defer to the trial court's judgment. Ruiz v. Conoco,
Inc., 868 S.W.2d 752, 758 (Tex. 1993). The scope of this review appropriately "strikes a balance
between the competing interests of the plaintiff and the defendant." Wilson, 886 S.W.2d at 262.

 The Clarks assert that at least a part of their cause of action arose from acts and
omissions that occurred at the Department's headquarters in Travis County, including the
Department's: (1) failure to implement and adhere to its official standards; (2) failure to monitor
or require adequate reports from facilities relating to the release of patients like Gary; (3) failure
to conduct adequate follow-up reviews to determine Kerrville's compliance with its regulations;
(4) failure to perform adequate reviews of Kerrville's superintendent; and (5) failure to provide
case management services to Gary in conformity with its rules and regulations. (4) 

 At trial, the Clarks offered the testimony of three witnesses who were employees
of the Department--Dennis Jones, the Department's commissioner; David Wanser, assistant deputy
commissioner; and Sue Dillard, the director of Standards and Quality Assurance. These three
witnesses testified at length about the Department's development of policies and rules, the
Department's supervision of Kerrville Outreach Center, and the Department's mechanisms to
ensure compliance with its policies. In addition, the court also admitted several documents which
indicated that Kerrville had received deficiency ratings by the Department in several different
areas and that Kerrville had been criticized for the "lack of collaboration between the hospital and
community services [that] has had a deleterious effect on compliance efforts." 

 Given the testimony of the three witnesses and the documents admitted at trial, we
conclude that probative evidence existed in the record that a part of the cause of action arose in
Travis County. See Ruiz, 868 S.W.2d at 758. The Department was a proper party to the suit;
thus, venue was proper in Travis County because a part of the cause of action arose there. Tex.
Civ. Prac. & Rem. Code Ann. § 101.102(a) (West 1986 & Supp. 1995). (5) Therefore, we are
confronted with a situation where the suit would have been proper in either of two counties under
the Tort Claims Act. The Clarks contend that because venue was proper in either county, they
had the right to choose Travis County as the trial site. See Wilson, 886 S.W.2d at 260. We
agree. Under Wilson, if the plaintiff has chosen a county of proper venue, no other county can
be a proper venue in the case. See id. at 261-62. We overrule Kerrville's first point of error.



Sovereign Immunity

 In its fourth, fifth, sixth, and seventh points of error, Kerrville contends that the
trial court erred in denying its motion for judgment n.o.v. because the Clarks' claims are barred
by the doctrine of sovereign immunity. The Tort Claims Act abolishes immunity only in certain
specified circumstances. See Tex. Civ. Prac. & Rem. Code Ann. § 101.021 (West 1986). (6) A
governmental unit is not liable for damages unless the negligent act alleged falls within the
statutory waiver of immunity. Salcedo v. El Paso Hosp. Dist., 659 S.W.2d 30, 31 (Tex. 1983). 
The specific waiver alleged by the Clarks was the condition or use of tangible property. See Tex.
Civ. Prac. & Rem. Code Ann. § 101.021(2) (West 1986). Kerrville argues that the Clarks did
not present sufficient evidence at trial that the use or misuse of tangible property caused Rebecca's
death.

 At trial, the jury found that Kerrville was negligent in discharging Gary on May
24, 1990, based upon inadequate medical records and inadequate administration of medications. 
The Clarks candidly admit that, although medical charts and records were considered tangible
personal property at the time of the trial under Texas Department of Mental Health & Mental
Retardation v. Petty, 848 S.W.2d 680, 684 (Tex. 1992), the supreme court subsequently
determined that such records did not constitute tangible personal property under the Act. See
University of Tex. Medical Branch v. York, 871 S.W.2d 175, 179 (Tex. 1994) (holding that
information recorded in a patient's medical records does not constitute tangible personal property). 
They argue, however, that York is not controlling because the unobjected to issue and instruction
given to the jury permitted it to consider not only medical records and charts, but in the
alternative, whether Kerrville was negligent in the use of medications for Gary. (7) The Clarks
assert that misuse of medication is a use of tangible personal property and, therefore, comes
within the waiver of immunity. See Tex. Civ. Prac. & Rem. Code Ann. § 101.021(2) (West
1986); Quinn v. Memorial Medical Ctr., 764 S.W.2d 915, 917 (Tex. App.--Corpus Christi 1989,
no writ). We agree that York is not dispositive of the issues in this case given that the pleadings
stated a claim for negligence based on misuse of medication and the jury instruction permitted the
jury to find negligence in Kerrville's release of Gary based on the use or misuse of medications. 

 Kerrville correctly asserts, however, that whether the actions of Kerrville are
characterized as use, misuse, or non-use of the medications affects our determination of whether
sovereign immunity has been waived under the Act. The supreme court has stated that it has
"never held that a non-use of property can support a claim under the Texas Tort Claims Act. 
Section 101.021, which requires the property's condition or use to cause the injury, does not
support this interpretation." Kassen v. Hatley, 887 S.W.2d 4, 14 (Tex. 1994). (8) The supreme
court has defined "use" as "to put or bring into action or service; to employ for or apply to a
given purpose." Salcedo, 659 S.W.2d at 33 (quoting Beggs v. Texas Dep't of Mental Health &
Mental Retardation, 496 S.W.2d 252, 254 (Tex. Civ. App.--San Antonio 1973, writ ref'd)).

 The parties dispute whether Kerrville's negligence involved the use or the non-use
of tangible personal property, i.e., medications. The Clarks argue that Kerrville's negligence
involved the misuse of medications because Kerrville prescribed an oral antipsychotic medication
as opposed to an injectionable antipsychotic drug. The Clarks' claim is premised on the fact that
Gary's medical records indicated a history of medication noncompliance, that Kerrville was aware
of Gary's noncompliance and his propensity for violence when not taking his medication, and that
Kerrville had used injectionable antipsychotic medications with Gary during previous
commitments. At trial, Dr. Saul Rosenthal, an expert witness, testified that injectionable
medications were readily available, that one injection would last approximately a month, and that
the staff should have monitored more carefully Gary's use of medications. Rosenthal opined that,
given Gary's history of noncompliance with drug regimens, he was surprised that injectionable
forms were not used because such use would have guaranteed compliance. Based on this and
other evidence, the Clarks assert that prescription of oral antipsychotic medications constituted
a misuse of tangible personal property because Kerrville should have prescribed injectionable
drugs which would have been effective for at least one month.

 In response, Kerrville urges that the failure to prescribe an injectionable form of
medication constitutes a non-use of tangible property and, thus, does not fall within the limited
waiver of the Act. See Kassen, 887 S.W.2d at 14. The crux of Kerrville's argument regarding
non-use of tangible personal property involves the failure to confine Gary after his voluntary
commitment. Appellate courts have consistently held that the failure to restrain or confine an
individual constitutes an error in judgment and does not involve the negligent use of tangible
personal property. See Bourne v. Nueces County Hosp. Dist., 749 S.W.2d 630, 632 (Tex.
App.--Corpus Christi 1988, writ denied); Beggs v. Texas Dep't of Mental Health & Mental
Retardation, 496 S.W.2d 252, 254 (Tex. Civ. App.--San Antonio 1973, writ ref'd). Although the
failure to confine Gary may not fall within the waiver provisions of the Act, the Clarks argue that
Kerrville's release of Gary was negligent because Kerrville failed to ensure that he would remain
medication compliant after his release. Therefore, their case is distinguishable from the cases
Kerrville cites in support of its argument that its negligence does not involve the misuse of
tangible personal property. (9)

 Nevertheless, we are compelled to determine whether prescribing oral medications
constitutes a misuse of tangible personal property that waives sovereign immunity. In Quinn v.
Memorial Medical Center, 764 S.W.2d 915 (Tex. App.--Corpus Christi 1989, no writ), the court
concluded that the dispensing of drugs by a hospital involved a use of tangible personal property
that fell within the waiver provisions of the Act. Id. at 917; see Tex. Civ. Prac. & Rem. Code
Ann. § 101.021(2) (West 1986). In Kassen, the supreme court concluded that a failure to provide
medication does not constitute a use of tangible personal property. See Kassen, 887 S.W.2d at
14. The facts of the instant cause fall somewhere on the continuum between Quinn and Kassen. 
If Kerrville had prescribed no medication, we would clearly be under Kassen's non-use of tangible
personal property standard. Kerrville, however, prescribed Gary oral antipsychotic medications,
even though his patient charts indicated that he had a history of noncompliance with medications
and a propensity to become violent when not medication compliant and abstinent from alcohol. 
We note that "[l]iability has been imposed when the injuries are alleged to have proximately
resulted from the negligent use of property in some respect deficient or inappropriate for the
purpose for which it was used." Hopkins v. Spring Indep. Sch. Dist., 706 S.W.2d 325, 327 (Tex.
App.--Houston [14th Dist.] 1986), aff'd, 736 S.W.2d 617 (Tex. 1987) (emphasis added). Under
the facts presented, we conclude that Kerrville's use of oral medications instead of injectionable
ones constituted a misuse of antipsychotic drugs to control Gary because oral medications were
inappropriate based on his history. Because the instant cause involves a use or misuse of tangible
personal property, it falls within the Tort Claims Act's waiver provision. See Tex. Civ. Prac. &
Rem. Code Ann. § 101.021(2) (West 1986). 

 Kerrville asserts that the Clarks' allegations involve actions by Kerrville which are
discretionary in nature and, thus, are excluded from liability pursuant to the Tort Claims Act. See
Tex. Civ. Prac. & Rem. Code Ann. § 101.056 (West 1986). (10) The purpose of excluding
discretionary acts from liability is "to avoid a judicial review that would question the wisdom of
a government's exercise of its discretion in making policy decisions." State v. Terrell, 588
S.W.2d 784, 787 (Tex. 1979). Although the government is immune from liability if the
negligence causing the injury lies in the formulation of policy, the government is not protected
if an employee or an officer acts negligently in carrying out that policy. Id. at 788.

 This Court has developed an approach for determining which discretionary acts
subject a governmental unit to liability:



 The discretionary function exception is limited to the exercise of
governmental discretion and does not apply to the exercise of nongovernmental
discretion such as professional or occupational discretion. . . . The government
is liable for its agent's departure from policies made by his superiors but not for
harm done by the agent's adherence to those policies even if they turn out to cause
harm.



Christilles v. Southwest Tex. State Univ., 639 S.W.2d 38, 42 (Tex. App.--Austin 1982, writ ref'd
n.r.e.) (concluding that professor's decision to use a real glass in a play involved an exercise of
professional or occupational discretion, not governmental discretion, and that the university could
be held liable) (quoting 3 Kenneth C. Davis, Administrative Law Treatise § 25.08, at 403-04
(Supp. 1982)); see Garza v. Salvatierra, 846 S.W.2d 17, 22 (Tex. App.--San Antonio 1992, writ
dism'd w.o.j.) ("Discretionary acts are those related to determining what the policy of the
governmental unit will be, but do not extend to the carrying out of the specifics of particular
policies . . . .").

 Examining the actions of the doctors and staff at Kerrville, we conclude that they
were exercising professional or occupational judgment in their decision not to prescribe an
injectionable antipsychotic medication for Gary. The supreme court, analyzing what discretionary
acts of medical personnel are protected under the doctrine of official immunity, recently held that
a reviewing court must distinguish between governmental and medical discretion. Kassen, 887
S.W.2d at 11. Medical personnel are not immune from tort liability in their exercise of medical
discretion. Id. We conclude that the staff exercised purely medical discretion in its decision to
medicate Gary orally rather than by injection. As we indicated in Christilles, the exercise of such
professional discretion does not absolve the government of liability under the Act. See Christilles,
639 S.W.2d at 42-43. (11)

 Finally, Kerrville asserts that because its employees were acting pursuant to a
court-ordered outpatient commitment, it is exempted from liability under the Act. Tex. Civ. Prac.
& Rem. Code Ann. § 101.053(b) (West 1986). Section 101.053(b) provides: "This chapter does
not apply to a claim based on an act or omission of an employee in the execution of a lawful order
of any court." Id. Although the court ordered an outpatient program for Gary, we fail to see how
this releases Kerrville from liability. Under the order, Kerrville was directed to develop and
submit a treatment plan for Gary, Kerrville's employees were responsible for Gary's outpatient
care, and Gary was ordered to comply with the treatment plan. The order indicates that the trial
court intended that Kerrville keep the court apprised of any changes in treatment and any
noncompliance of Gary with the treatment plan. The court, however, left to Kerrville's discretion
the development and implementation of Gary's treatment. Dr. William Schultheis, Gary's
physician at Kerrville, testified that he did not report the decision to discontinue antibuse (12) or the
fact that Gary's blood levels were subtherapeutic, indicating that he had not been taking his
medication, because these were decisions that the court had left to hospital personnel. 

 The court never ordered that Gary not be given injectionable antipsychotic
drugs--this type of decision was left to Kerrville's staff. Although we agree that the decision to
release Gary pursuant to the court order may be protected under the judicial exception of the Act,
the decision to release Gary without taking necessary steps to ensure medication compliance is not
similarly protected. Kerrville's actions are not immune from liability under the judicial exception. 
See Tex. Civ. Prac. & Rem. Code Ann. § 101.053(b) (West 1986). 

 Because we have concluded that Kerrville's negligence falls within the waiver of
sovereign immunity under the Tort Claims Act, we overrule Kerrville's fourth, fifth, sixth, and
seventh points of error.



Duty 

 In its second and third points of error, Kerrville asserts that the trial court erred
in denying its motion for judgment n.o.v. because Kerrville owed no duty to the Clarks and the
Clarks had no standing to pursue their negligence claim. Duty is the threshold issue in a
negligence case, and the existence of a duty is a question of law for the court to decide from the
circumstances surrounding the occurrence. Greater Houston Transp. Co. v. Phillips, 801 S.W.2d
523, 525 (Tex. 1990). In assessing whether a defendant is under a duty, the court considers
several interrelated factors, including the risk, foreseeability, and likelihood of injury weighed
against the social utility of the actor's conduct, the magnitude of the burden of guarding against
the injury, and the consequences of placing that burden on the defendant. Otis Eng'g Corp. v.
Clark, 668 S.W.2d 307, 309 (Tex. 1983). Of these factors, foreseeability of the risk is the
dominant consideration. El Chico Corp. v. Poole, 732 S.W.2d 306, 311 (Tex. 1987).

 Kerrville initially argues that the Clarks lack standing because no physician-patient
relationship existed between Kerrville's medical staff and Rebecca that gave rise to a duty to
protect Rebecca from harm. See Tex. Rev. Civ. Stat. Ann. art. 4590i, § 1.03(a)(4) (West Supp.
1995) (providing for claim against health care provider for treatment that results in injury or death
to patient). Kerrville contends that a doctor owes a duty only to his or her patients, and that this
duty cannot be extended to include the patient's victims. See Bird v. W.C.W., 868 S.W.2d 767,
770 (Tex. 1994) (concluding that psychologist owed no duty to father of child diagnosed as
sexually abused because no physician-patient relationship existed between father and
psychologist); Dominguez v. Kelly, 786 S.W.2d 749, 751 (Tex. App.--El Paso 1990, writ denied);
Salas v. Gamboa, 760 S.W.2d 838, 840 (Tex. App.--San Antonio 1988, no writ).

 A few cases have addressed a doctor's duty to third parties injured by a patient. 
In Gooden v. Tips, 651 S.W.2d 364 (Tex. App.--Tyler 1983, no writ), the court held that a
physician owes a duty to the driving public to warn a patient of the possible consequences of
driving while using a prescribed medication. Id. at 369-70. In contrast, Kerrville cites Williams
v. Sun Valley Hospital, 723 S.W.2d 783 (Tex. App.--El Paso 1987, writ ref'd n.r.e.), which held
that a hospital owed no duty to a woman injured when her car struck a mentally ill patient who
had escaped from the hospital. The court refused to impose liability "for the unpredictable
conduct of . . . patients with a mental disorder." Id. at 787. Both of these cases, however,
acknowledged that a distinction would exist if the doctor knew or had reason to know that the
patient had violent propensities. See id. (refusing to impose liability "[w]here there is no
allegation of a threat or danger to a readily identifiable person"); Gooden, 651 S.W.2d at 370
(noting that doctor had no duty to prevent patient from driving because doctor had not taken
control of patient and patient was not a person with dangerous and violent propensities).

 Although generally a doctor owes a duty only to his or her patients, we are
confronted with a situation very different from that presented in the cases cited by Kerrville. 
None of those cases involved a patient who the doctor knew or had reason to know was
dangerous. Section 319 of the Restatement (Second) of Torts provides:



One who takes charge of a third person whom he knows or should know to be likely
to cause bodily harm to others if not controlled is under a duty to exercise
reasonable care to control the third person to prevent him from doing such harm.



Restatement (Second) of Torts § 319 (1965) (emphasis added). In concluding that an employer
has a duty to prevent an employee from harming others, the supreme court noted, "[s]uch a duty
may be analogized to cases in which a defendant can exercise some measure of reasonable control
over a dangerous person when there is a recognizable great danger of harm to third persons." 
Otis Eng'g, 668 S.W.2d at 311 (emphasis added). This case fits squarely within section
319--Kerrville had two options in exercising control over Gary: (1) petition the court to change
the outpatient commitment to inpatient commitment based on Gary's medication noncompliance
or (2) prescribe an injectionable antipsychotic medication that would have stabilized Gary's
outpatient condition for at least a month. Clearly, the hospital took charge of Gary when it
permitted Gary's voluntary commitment on May 22, 1990; thus, it was under a duty to use
reasonable care in the release of Gary on May 24, 1990. At the very least, this duty required that
Kerrville ensure Gary's medication compliance.

 Analyzing the situation presented here under the factors outlined in Otis
Engineering and utilized in Bird, it becomes clear that Kerrville had a duty to use reasonable care
in its release of Gary. Otis Eng'g, 668 S.W.2d at 309; Bird, 868 S.W.2d at 769-70. In the
instant cause, the risk, foreseeability, and likelihood of injury were high. Evidence in the record
indicates that Gary had a great propensity for violence when he was not taking antipsychotic
drugs. In contrast, we can find no social utility in the hospital's decision not to medicate Gary
by injection, given that it was well aware of Gary's long history of noncompliance. In addition,
we perceive no appreciable burden to the hospital staff in medicating by injection as opposed to
prescribing medication to be taken orally. We conclude that the hospital owed a duty to use
reasonable care in its release of Gary. (13) We overrule Kerrville's second and third points of error.



Proximate Cause 

 In its eighth point of error, Kerrville asserts that the trial court erred in denying its
motion for judgment n.o.v. and its motion to disregard the jury's answers because there was no
evidence or insufficient evidence to support the jury's findings that any actions of Kerrville were
the proximate cause of Rebecca's death. (14) In deciding a no-evidence point, we must consider only
the evidence and inferences tending to support the finding of the trier of fact and disregard all
evidence and inferences to the contrary. Alm v. Aluminum Co. of Am., 717 S.W.2d 588, 593
(Tex. 1986), cert. denied, 498 U.S. 847 (1990). To determine the factual sufficiency of the
evidence, we must consider and weigh all the evidence; the judgment should be set aside only if
it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. 
Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986).

 Proximate cause is composed of two essential elements: (1) cause in fact and (2)
foreseeability. McClure v. Allied Stores of Tex., Inc., 608 S.W.2d 901, 903 (Tex. 1980). Cause
in fact requires that the negligent act at issue be a substantial factor in producing the injury,
without which such harm would not have resulted. Brown v. Edwards Transfer Co., 764 S.W.2d
220, 223 (Tex. 1988). The supreme court has established the requirements of foreseeability:



"Foreseeability" means that the actor, as a person of ordinary intelligence, should
have anticipated the dangers that his negligent act created for others. . . . 
Although the criminal conduct of a third party may be a superseding cause which
relieves the negligent actor from liability, the actor's negligence is not superseded
and will not be excused when the criminal conduct is a foreseeable result of such
negligence. There can be concurrent proximate causes of an accident. All persons
whose negligent conduct contributes to the injury, proximately causing the injury,
are liable.



Travis v. City of Mesquite, 830 S.W.2d 94, 98 (Tex. 1992) (emphasis added).

 Causation does not have to be supported by direct evidence; circumstantial evidence
and inferences drawn therefrom will sufficiently support a finding of causation. Havner v. E-Z
Mart Stores, Inc., 825 S.W.2d 456, 459 (Tex. 1992). A plaintiff is not required to prove beyond
a reasonable doubt that the defendant's actions were a cause of the injury, and it suffices if the
plaintiff introduces evidence "from which reasonable persons may conclude that it was more
probable that the event was caused by the defendant than that it was not." W. Page Keeton,
Prosser and Keeton on the Law of Torts § 41, at 269 (5th ed. 1984); see Havner, 825 S.W.2d at
460.

 We now turn to an examination of the evidence. Dr. Rosenthal, the Clark's expert
witness, testified that if Gary had not been released from the hospital, he would not have been able
to murder Rebecca. He also testified that Kerrville was negligent in discharging Gary without
using an injectionable antipsychotic drug to ensure his medication compliance because Kerrville's
records indicated that Gary was not complying with his medication regimen. Dr. Rosenthal
concluded that, given Gary's past history of violence when drinking and not medication compliant,
"there was a high probability that if this person was sent out with no particular place to go, in the
midst of separation and divorce from his wife, with no money, that there was a severe and
significant risk that he was--that in all likelihood or probability that he was going to be violent
again."

 In addition, Kerrville's own expert witness, Dr. J. Ray Hays, testified that Gary's
medical records indicated that he had been assaultive toward Rebecca before his voluntary
commitment on May 22, 1990, and that if the same factors that made him violent toward her
previously were present, he would be violent toward her again. He also testified that failure to
take medication would probably lead to deterioration of mental condition, that Gary's delusional
thinking at the time of his commitment on May 22 indicated that his mental condition was
deteriorating, and that the deterioration could have been caused by failure to take his antipsychotic
medication. He stated that a patient who has become violent in the past when medication
noncompliant may become violent in the future if not adhering to the prescribed drug regimen. 
He opined that the duty of Kerrville's staff "once they have accepted him as a patient, is to work
to find an appropriate community placement and ensure that he has a follow-up appointment to
stabilize him on new medication which might be appropriate when you discharge him." Similarly,
Dr. Richard Coons testified that Gary had a history of violent and assaultive behavior, and that
past violence could constitute an indication of future violence. Coons also admitted that Gary had
been noncompliant with his treatment programs over the years.

 We conclude that the evidence adduced at trial sufficiently established that
Kerrville's failure to use an injectionable antipsychotic drug was a cause-in-fact of Rebecca's
death. A causal connection must rest in reasonable probabilities, but "reasonable probability is
determined by a consideration of `the substance of the testimony of the expert witness and does
not turn on semantics or on the use by the witness of any particular term or phrase.'" Otis
Elevator Co. v. Wood, 436 S.W.2d 324, 331 (Tex. 1968) (quoting Insurance Co. of N. Am. v.
Myers, 411 S.W.2d 710, 713 (Tex. 1966)). In determining the causal relationship, the trier of
fact is not limited to medical opinion but may view the evidence as a whole. Although no expert
specifically testified that the failure to medicate Gary properly caused Rebecca's death, the record
is replete with evidence from which the jury could establish such a causal link. Evidence of
Gary's deteriorating mental condition at the time of his release, statements to Kerrville staff in
which he confirmed he was not taking his thorazine, previous episodes of violence against
Rebecca, the fact that Gary's medical records explicitly contained statements that Gary could be
extremely dangerous when not medication compliant, coupled with expert testimony concerning
the likelihood of future violence based on past violence and the fact that Gary murdered Rebecca
approximately seven days after his release, provides ample evidence from which the jury could
conclude that failure to medicate Gary properly caused Rebecca's death.

 We also conclude that the foreseeability requirement of proximate cause was
satisfied. Dr. Rosenthal testified that it was reasonably foreseeable that "an event like [Rebecca's
murder] could happen." The hospital staff knew that Gary could "become extremely dangerous
to self or others if not medication compliant and abstinent from alcohol." Dr. Thomas Hardee
testified as to the reasonable probability that, based on his past medical history, Gary would
become violent and aggressive if not medication compliant. Kerrville argues that Dr. Rosenthal's
refusal to opine that there was a ninety to one hundred percent chance that Gary would harm
someone upon release and to agree that the hospital knew or should have known that Gary would
murder Rebecca renders his opinions too speculative to be relied upon by a jury. We disagree. 
"Foreseeability does not require that a person anticipate the precise manner in which injury will
occur once he has created a dangerous situation through his negligence." Travis, 830 S.W.2d at
98; see Harvey v. Stanley, 803 S.W.2d 721, 726 (Tex. App.--Fort Worth 1990, writ denied)
(foreseeability does not require actor to anticipate precise hazard or consequences that may grow
out of dangerous situation). Foreseeability requires only that Kerrville should have reasonably
anticipated that Gary would commit some type of violent act if not medication compliant, not that
it anticipate that Rebecca would be murdered. See Gutierrez v. Scripps-Howard, 823 S.W.2d
696, 699 (Tex. App.--El Paso 1992, writ denied) ("Foreseeability does not require the actor to
anticipate in the particular incident, but only that he reasonably anticipate the general character
of the injury."). The record provides ample evidence that Kerrville knew of Gary's propensity
for violence and could have reasonably anticipated that Rebecca might be the victim of that
violence if Gary was not medication compliant. The trial court did not err in refusing to grant
the motions for judgment n.o.v. and to disregard the jury's finding on proximate cause. We
overrule Kerrville's eighth point of error.



CONCLUSION


 We have determined that venue was proper in Travis County, sovereign immunity
does not protect Kerrville from liability, Kerrville owed a duty to control Gary through the use
of injectionable drugs after its decision to release him, and sufficient evidence supports the jury's
finding that Kerrville proximately caused the death of Rebecca. Accordingly, we affirm the
judgment of the trial court.



 

 Mack Kidd, Justice

Before Justices Powers, Kidd and B. A. Smith

Affirmed

Filed: May 31, 1995

Publish

1.   The record indicates that Gary decapitated, dismembered, and burned Rebecca's
body, and then attempted to hide the remains in a field.
2.   The Clarks initially respond that Kerrville waived its venue challenge by waiting
fifteen months to request a hearing on its motion to transfer. Rule 87(1) of the Texas
Rules of Civil Procedure provides: "The determination of a motion to transfer venue
shall be made promptly . . . . The movant has the duty to request a setting on the motion
to transfer." This Court has previously held that Rule 87(1) contemplates that "a movant
may not sit on his rights indefinitely without incurring waiver." Whitworth v. Kuhn, 734
S.W.2d 108, 111 (Tex. App.--Austin 1987, no writ). In Whitworth, the plaintiff waited
thirteen months after filing his motion to transfer before requesting a hearing. Similarly,
Kerrville and the Department waited approximately fifteen months before requesting a hearing
on their motion. Although a "complete lack of diligence is inconsistent with the purpose of
Rule 87(1), and the trial court could have refused [the] motion on that basis," Whitworth, 734
S.W.2d at 111, the Clarks overlook the fact that this Court nevertheless addressed the merits
of the venue claim in Whitworth because the trial court did not refuse the motion on the basis
of a lack of diligence. See id. Because the trial court did not deny Kerrville and the
Department's motion on this ground, we will address the merits of the point of error.
3.   Rule 87(2)(b) provides:


 It shall not be necessary for a claimant to prove the merits of a cause of
action, but the existence of a cause of action, when pleaded properly, shall be
taken as established as alleged by the pleadings. When the defendant
specifically denies the venue allegations, the claimant is required, by prima
facie proof . . . to support such pleading that the cause of action taken as
established by the pleadings, or a part of such cause of action, accrued in the
county of suit. 
4.   The crux of the Clarks' claim against the Department involved the use and misuse
of records, files, surveys, reports, and other information about Kerrville and its
outpatient program. At the time of the venue hearing and trial, the misuse of records
and files constituted use of tangible personal property for purposes of the Texas Tort
Claims Act. See Tex. Civ. Prac. & Rem. Code Ann. § 101.021(2) (West 1986); Texas Dep't
of Mental Health & Mental Retardation v. Petty, 848 S.W.2d 680, 684 (Tex. 1992). The
supreme court subsequently held that information recorded in writing does not constitute
tangible property for purposes of the Tort Claims Act. See University of Tex. Medical Branch
v. York, 871 S.W.2d 175, 178-79 (Tex. 1994). The Clarks do not challenge on appeal the
trial court's judgment n.o.v. for the Department.
5.   Kerrville contends that the trial court's grant of a judgment n.o.v. indicates that no
cause of action was viable against the Department; thus, the trial court should have
transferred venue to Kerr County. The Clarks presented evidence that the Department
was negligent in its implementation of policies regarding the treatment of patients like
Gary, and the jury specifically found the Department "negligent in failing to ensure
compliance by Kerrville . . . with its rules and standards as they affected the care and
treatment of Gary Ligon." The Department asserted several grounds in its motion for
judgment n.o.v.; the court did not specify which grounds it relied upon in granting the
motion. We cannot speculate on the grounds for the judgment n.o.v., and we refuse to
hold that venue was improper based solely on the trial court's ultimate grant of the
motion. Cf. Humphrey v. May, 804 S.W.2d 328, 329-30 (Tex. App.--Austin 1991, writ
denied) (allowing later findings to control over earlier venue rulings of trial court would result
in significant waste of judicial time and resources). 
6.   The Tort Claims Act provides:


A governmental unit in the state is liable for:


 . . . 


(2) personal injury and death so caused by a condition or use of tangible
personal or real property if the governmental unit would, were it a
private person, be liable to the claimant according to Texas law.


Tex. Civ. Prac. & Rem. Code Ann. § 101.021(2) (West 1986).
7.   Question Number 1:


Was Kerrville State Hospital negligent in discharging Gary Ligon on May 24,
1990?


 You are instructed that in determining the negligence, if any, of the
officers and employees of Kerrville State Hospital, consider only their use or
misuse of medical records, admission and discharge documents, and/or
medications of Gary Ligon.


(Emphasis added.) 
8.   The supreme court, however, has held that the negligent failure to furnish an item
of property necessary to make safe the tangible property actually supplied invokes the
waiver of the Tort Claims Act. York, 871 S.W.2d at 181 (Gammage, J., dissenting); see
Robinson v. Central Tex. MHMR Ctr., 780 S.W.2d 169, 171 (Tex. 1989) (concluding that
sovereign immunity was waived by the failure to provide a life preserver because the preserver
was an essential part of the swimming attire that the defendant had a responsibility to provide);
Lowe v. Texas Tech Univ., 540 S.W.2d 297, 300 (Tex. 1976) (holding that failure to provide
knee brace to football player fell within waiver provision because the brace was part of the
uniform that he should have been provided and failure to provide made the uniform defective). 

9.   Kerrville also states in its brief:


Further, there is insufficient evidence in the record that appellant negligently
used or misused Gary Ligon's medications. The only evidence offered by
appellees that might arguably be probative of the negligent use or misuse of
medications is certain testimony of Dr. Saul Rosenthal . . . that KSH should
have used an injectable form of medication, in liew [sic] of the medication
used.


Although Kerrville apparently contends that the evidence is factually insufficient to
support the trial court's denial of a judgment n.o.v., legal sufficiency is the only standard
by which a motion for judgment n.o.v. can be measured. A motion for judgment n.o.v.
can only be granted if there is no evidence to support the jury's findings. Carrow v.
Bayliner Marine Corp., 781 S.W.2d 691, 693 (Tex. App.-- Austin 1989, no writ). Clearly,
Dr. Rosenthal's testimony provides some evidence of Kerrville's use or misuse of Gary's
medications, thereby making the denial of the judgment n.o.v. proper. 
10.   Section 101.056 provides:


This chapter does not apply to a claim based on:


(1) the failure of a governmental unit to perform an act that the unit is
not required by law to perform; or


(2) a governmental unit's decision not to perform an act or on its failure
to make a decision on the performance or nonperformance of an act
if the law leaves the performance or nonperformance of the act to the
discretion of the governmental unit.
11.   Kerrville also contended that the official immunity of its employees preserved its
governmental immunity under section 101.056. See City of Houston v. Kilburn, 849
S.W.2d 810, 812 (Tex. 1993) (governmental sovereign immunity remains intact if employee is
protected under doctrine of official immunity). In order to be protected, however, the
government must be able to show that the employee was exercising governmental discretion,
as opposed to medical discretion. See Kassen, 887 S.W.2d at 11. Because we have concluded
that Kerrville's staff exercised purely medical discretion in its decision to medicate Gary with
oral antipsychotic drugs before his release, the staff would not be protected by official
immunity. Hence, sovereign immunity cannot be preserved on this basis. 
12.   Antibuse is a medication given to alcoholics which makes them physically ill if they
drink alcohol.
13.   Kerrville argues that there was no readily identifiable victim and, thus, it had no
duty to warn Rebecca because Gary had made no specific threats against her. See
Tarasoff v. Regents of the Univ. of Cal., 551 P.2d 334, 351 (Cal. 1976). Although we do not
decide the issue of duty based on a failure to warn Rebecca of Gary's imminent release and his
deteriorating mental condition, we note that a threat need not be made against a specific victim
in order for the duty to warn to be imposed. The Arizona Supreme Court has specified which
individuals fall within the duty to warn:


[W]e agree with those cases interpreting Tarasoff which state that a psychiatrist
should not be relieved of this duty merely because his patient never verbalized
any specific threat. . . . When a psychiatrist determines, or under applicable
professional standards reasonably should have determined, that a patient poses a
serious danger of violence to others, the psychiatrist has a duty to exercise
reasonable care to protect the foreseeable victim of that danger. The foreseeable
victim is one who is said to be within the zone of danger, that is, subject to
probable risk of the patient's violent conduct.


Hamman v. County of Maricopa, 775 P.2d 1122, 1127-28 (Ariz. 1989). We agree with the
Clarks that under this definition, Rebecca was a foreseeable victim. As Gary's wife, she was
certainly within the zone of danger, and she had been the victim of Gary's violence on many
previous occasions. Under the circumstances presented in the instant cause, Kerrville may
have had a duty to warn Rebecca, but since we have concluded that Kerrville owed a duty to
the general public to use reasonable care in the release of Gary, we do not reach the question
of Kerrville's duty to warn. 
14.   Kerrville initially contends that this case involves a medical malpractice claim
governed by Article 4590i and, therefore, the Clarks were required to prove through
expert testimony that the negligent treatment of Gary caused Rebecca's death. See Tex.
Rev. Civ. Stat. Ann. art. 4590i, § 1.03(a)(4) (West Supp. 1995); Wendenburg v. Williams,
784 S.W.2d 705, 706 (Tex. App.--Houston [14th Dist.] 1990, writ denied). Article 4590i,
however, concerns only claims against a health care provider for treatment that results in the
injury or death of a patient. See Tex. Rev. Civ. Stat. Ann. art. 4590i, § 1.03(a)(4) (West
Supp. 1995). Article 4590i is not controlling on the issues presented by the Clarks' wrongful
death claim.