**Dennis P. CHRISTILLES, Appellant,**

v.

**SOUTHWEST TEXAS STATE UNIVERSITY, Appellee.**

**No. 13444.**

Court of Appeals of Texas, Austin.

Sept. 1, 1982.

Rehearing Denied Oct. 6, 1982.

---

James A. Hall, Branton & Mendelsohn, Inc., San Antonio, for appellant.

Mark White, Atty. Gen., Jack Sparks, Asst. Atty. Gen., Austin, for appellee.

SHANNON, Justice.

Appellant Dennis Christilles sued appellee Southwest Texas State University in the district court of Hays County for personal injuries pursuant to the Texas Tort Claims Act, Tex.Rev.Civ.Stat.Ann. art. 6252–19 (Supp.1982). Upon motion, the district court withdrew the case from the jury and rendered judgment that Christilles take nothing. This Court will reverse that judgment and remand the cause for trial.

When injured, Christilles was a drama student at the University engaged in a dress rehearsal of *Cat On A Hot Tin Roof.* Christilles' participation in the production was a requirement for his course of study. Christilles portrayed Brick Pollitt, who walked on crutches because his ankle was broken. In one scene, Christilles was to have an argument with the character Big Daddy, who pulls the crutch away from Christilles, causing him to fall.[1] Christilles was to fall with a drinking glass in his hand, but was instructed by the director to fall with his palm facing up so the glass would not break. Nonetheless, during the dress rehearsal, Christilles was thrown off balance when the crutch was yanked away, and tried to break his fall with the hand holding the glass. The drinking glass shattered, lodging a large fragment in Christilles' hand. He suffered extensive nerve and tendon damage, and incurred substantial medical bills for treatment of the injury.

The production was directed by a member of the University's faculty, Dr. John E. Clifford, who had total responsibility for direction and who made all production decisions. Clifford purposely decided to use an actual drinking glass in the scene in place of a glass substitute often used in theater productions. Clifford's thinking was that

1. Act II (Signet Books, 1955, at 77):

   \* \* \* \* \* \*

   BIG DADDY [fiercely]: Yeah! Christ!—is right ... [Brick breaks loose and hobbles toward the gallery.] [Big Daddy jerks his crutch from under Brick so he steps with the injured ankle. He utters a hissing cry of

   anguish, clutches a chair and pulls it over on top of him on the floor.]
   Son of a—tub of—hog fat ....
   BRICK: Big Daddy! Give me my crutch. [Big Daddy throws the crutch out of reach.]

   \* \* \* \* \* \*

the glass substitute did not appear sufficiently realistic although it shattered much like actual glass without breaking into sharp fragments.

After appellant rested his case, counsel for the University made the following motion:

Now comes Southwest Texas State University, Defendant in the above numbered and entitled cause, herein designated "State", and respectfully requests the Court to either withdraw the case from the jury and render judgment for the State, or, in the alternative, to instruct the jury to return a verdict in favor of the State, for the following reasons, to-wit:

Number One: The State has governmental immunity except to the limited waiver thereof created by the Texas Tort Claims Act, which is Article 6252–19 Vernon's Civil Statutes. The pleadings and proof in this case fail to prove a valid cause of action against State, and State is entitled to judgment as a matter of law;

Number Two: The law is well settled in Texas that an error of judgment on behalf of a State employee does not constitute a cause of action under the Texas Tort Claims Act. The Texas Tort Claims Act provides limited liability in three areas, to-wit: negligent operation of a motor vehicle, premises defect, and the negligence of the State in using property. There is no allegation or proof that the breakable glass used was either deficient or defective. The total allegation of negligence on behalf of the State is in using a breakable glass. This does not constitute a cause of action under the Texas Tort Claims Act. Since the property in question, the breakable glass, was not deficient or defective, the State is entitled to judgment as a matter of law.

Number Three: The Texas Tort Claims Act expressly provides that it shall not apply to any claim arising out of the acting or the failure to act on the part of the governmental unit in a discretionary manner. Section 14(7) of the Texas Tort Claims Act. The undisputed evidence reveals that the director of the play was in sole charge of the casting, the direction of the play and of obtaining the various properties required by the play. The undisputed evidence reveals that said director conducted an experiment on the type of glass to be used, that he was representing the University as its sole representative in passing on this discretionary matter, and that his decision was that it was necessary to use the type of glass used because of the type of play being presented, the proximity of the audience to the stage, and the other matters set out in the proof, and his decision was that of the University in a discretionary matter. Under the laws of Texas there is no liability on the part of the University for the use of a breakable glass under the pleadings and the proof in this case.

The district court rendered the take nothing judgment, which the court stated was based upon the second ground recited in the motion and upon the rationale of *Velasquez v. Jamar,* 584 S.W.2d 729 (Tex.Civ.App. 1979, no writ) and Chief Justice Greenhill's concurring opinion in *Lowe v. Texas Tech University,* 540 S.W.2d 297, 301–3 (Tex. 1976).

At common law the state, of course, was not liable for torts committed by its employees and agents. *E.g., State v. Hale,* 146 S.W.2d 731, 735 (Tex.1941). In 1970, the legislature enacted the Texas Tort Claims Act. Section 3 of the statute provides for waiver of governmental immunity in the use of publicly owned automobiles and premise defects. That section also provides that the state is liable, subject to certain exceptions, for money damages for death or personal injury proximately caused from "some condition or some use of tangible property, real or personal." As observed by Chief Justice Greenhill, the language of § 3 has been difficult to construe and apply, particularly in those cases, as in the present appeal, wherein a plaintiff has alleged liability arising from "some condition or some use" of personal or real property. *Lowe,* 540 S.W.2d at 301.

In *Lowe,* the plaintiff, a football player, pleaded that his personal injuries had been proximately caused by the acts of Texas Tech athletic personnel. He contended athletic trainers for the University furnished him with defective equipment and also failed to furnish him with proper protective equipment, each act being a "use of tangible personal property" which proximately caused him to suffer a severe knee injury when tackled. The Supreme Court was of the view that both allegations stated a cause of action within the "use or condition of property" clause of section 3, resulting in waiver of the defense of sovereign immunity.

As Chief Justice Greenhill stated in *Lowe,* section 3 does not waive the state's immunity defense each time a state agent or employee has committed a tort and some personal property is involved, else section 3 would be virtually an absolute waiver of the state's immunity because some direct or indirect use of property can be identified in almost every personal injury case. The legislative history of the Act plainly did not contemplate such a result. *Lowe,* 540 S.W.2d at 301–2.

*Velasquez v. Jamar, supra,* recognized *Lowe* as standing for the proposition that whenever a plaintiff alleges property supplied by the state is defective *or inappropriate* for the purpose for which it is used, section 3 applies. 584 S.W.2d at 732; *see also Brantley v. City of Dallas,* 545 S.W.2d 284, 286 (Tex.Civ.App.1976, writ ref'd n.r. e.). The construction of § 3 in these cases comports with the literal language of the Act and its command that its provisions be liberally construed. Tex.Rev.Civ.Stat.Ann. art. 6252–19, § 13 (1970).

The University urged and the district court concluded that Christilles was required to plead and prove the glass, itself, was in some manner *defective.*

Christilles pleaded and produced some proof, pursuant to *Velasquez* and *Lowe,* that his injury resulted from the use of, or condition of, property either defective or *inappropriate* (use of breakable drinking glass rather than a safer one). Christilles claims, correctly, that a jury could conclude that the drinking glass selected by the director was *inappropriate* under the circumstances. We are of the view this is a character of "use" of property contemplated by section 3.

The University maintains by cross-point, in effect, that the district court erred in not sustaining its motion upon authority of section 14(7) of the Texas Tort Claims Act. Section 14(7) exempts from liability:

> Any claim based upon the *failure* of a unit of government to perform any act which said unit of government is not required by law to perform. If the law leaves the performance or nonperformance of an act to the discretion of the unit of government, its decision *not to do the act,* or its *failure to make a decision* thereon, shall not form the basis for a claim under this Act.

(emphasis added).[2]

■ The Supreme Court, in *Terrell v. State,* 588 S.W.2d 784 (Tex.1979), stated the purpose of the section 14(7) exemption was:

> to decide whether to perform the act would it seem that the § 14(7) exemption applies. Section 14(7) is an apparent codification of the common law doctrine of "nonfeasance"—that a party who fails to take steps to protect another from harm is not liable to the injured party.
>
> That this construction of § 14(7) is proper is bolstered by a review of the "discretionary function" exemption of the Federal Tort Claims Act in 28 U.S.C.A. § 2680(a) (1965).
>
> Section 2680(a) differs from § 14(7) of the Texas act because it exempts both "the exercise and performance" and "the failure to exercise or perform" a discretionary *function or duty* of a federal agency. In different words, under the

---

2. Ostensibly, the § 14(7) exemption is applicable only to the government's *nonperformance* of a discretionary act. The language of this section is phrased in terms of the government's "failure to perform an act," a decision "not to do an act," or the unit's "failure to make a decision." The section, on its face, would seem not to apply when a governmental unit has undertaken to perform an affirmative act. In other words, when a governmental unit *does* choose to perform an act which it is not required to perform, and does that act negligently, § 14(7) seemingly does not apply and the unit is subject to liability. Only when the government decides not to do an act or refuses

to avoid a judicial review that would question the wisdom of a government's exercise of its discretion in making policy decisions. The interests to be served . . . are several—*e.g.*, effective, unfettered performance of officials in making policy decisions and the maintenance of the separation of powers between the executive, legislative, and judicial branches of government.

*Id.* at 787. Section 14(7) therefore retains the state's sovereign immunity when governmental officials or employees determine *what* policy will be, but not when those officials or employees *carry out* the specifics of a particular policy. *Id.* at 788; *see generally* Comment, *The "Policy Decision" Exemption of the Texas Tort Claims Act: State v. Terrell,* 32 Baylor L.Rev. 403 (1980).

The Federal Tort Claims Act contains a similar exclusion for discretionary functions performed by federal employees. 28 U.S. C.A. § 2680(a) (1965). The federal courts have attempted to determine what discretionary activity comes within the exception and have formulated a "planning—operational" distinction in which negligent discretionary acts of federal employees at the policymaking or "planning" level afford no basis for liability, while the negligent exercise of discretion at the working or "operational" level is subject to liability. *See* W. Prosser, *Handbook of the Law of Torts* § 131, at 973 (4th ed. 1971). The difficulty with this analysis is that specific "operational" details are frequently decided at the "planning" level, and thus are exempt from liability. Perhaps the correct analysis of which decisions or discretionary functions are exempt from liability is made by Professor Kenneth C. Davis:

The discretionary function exception is limited to the exercise of governmental discretion and does not apply to the exercise of nongovernmental discretion such as professional or occupational discretion. The driver of a mail truck makes many discretionary decisions but they are not within the exception because they involve driving discretion, not governmental discretion. The physician at the veterans' hospital exercises professional discretion in deciding whether or not to operate, but he combines professional discretion with governmental discretion when he decides that budgetary restrictions require non-use of an especially expensive treatment in absence of specified conditions. The government's bank examiners subject the government to liability for their failure to detect corruption that would be discovered by standard methods of examination but not for deciding what the frequency or intensity of the bank examinations should be. The government is liable for its agent's departure from policies made by his superiors but not for harm done by the agent's adherence to those policies even if they turn out to cause harm.

3 K. Davis, *Administrative Law Treatise* § 25.08, at 403–4 (Supp.1982).

In analyzing the discretionary function exception, it then should be determined whether a particular matter of discretion is one committed to the executive or legislative branches of government which the courts should not second-guess. If the decision is not of this type, the government remains liable for its employees' negligent exercise of discretion. Under the Texas Tort Claims Act, of course, the state's liability is limited even further because a plaintiff must also show the state employee's

---

federal act both the negligent performance—misfeasance, *and* the negligent non-performance—nonfeasance, of discretionary duties are exempt from liability. Under the Texas act, however, a proper interpretation of § 14(7) indicates only negligent nonperformance of a discretionary act is immune.

Nevertheless, courts and litigants have viewed § 14(7) as applying to affirmative acts as well as to failures to act by state employees and agents. The section has been difficult to apply

because its language does not specify which discretionary acts are exempted from liability. Conceivably, almost all acts of government employees and agents involve a certain degree of discretion, so unless § 14(7) is to be construed as a blanket exemption from liability of all choices made by state employees (a result plainly not contemplated by the Act), the exemption must apply to a narrower set of discretionary acts.

negligence occurred in the condition or use of some personal or real property.

In the present appeal, Dr. Clifford, the director of the play, decided to use an actual drinking glass in the scene. Christilles alleged this decision was negligent and introduced evidence that the professor could have chosen other safer substitutes. The professor's decision to use the glass was obviously not a determination of *governmental* policy of the type the legislature, the governor, or other state executive officials make. It involved the exercise, in Professor Davis' words, of "professional" or "occupational" discretion. As *Terrell v. State, supra,* makes clear, this character of discretion does not come within the exception to the state's liability created in section 14(7). The district court's judgment could not have been properly based on the ground Dr. Clifford's selection of glass was a discretionary act under section 14(7).

The judgment is reversed and the cause is remanded to district court for trial.