The STATE of Texas, et al., Appellants,

v.

John SAN MIGUEL, et al., Appellees.

No. 14–95–00756–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

July 30, 1998.

Rehearing Overruled Sept. 3, 1998.

David Bass Strain, Austin, Cliff Harrison, Stacy L. Stair, Houston, for appellants.

John T. McDowell, Joe Crabb, Michael T. Fuerst, Houston, for appellees.

Before LEE, AMIDEI, and EDELMAN, JJ.

## OPINION ON REHEARING

LEE, Justice.

The State's motion for rehearing is denied, the majority and concurring opinions issued in this case on January 8, 1998 are withdrawn, and the following opinions are substituted in their places.

The State of Texas appeals from a jury verdict awarding appellees damages for wrongful death and personal injuries sustained in a one car accident. In ten points of error, the State contends (1) the trial court improperly submitted the case under a general negligence charge, (2) the trial court erred in refusing to submit a jury question on the affirmative defense of official immunity, (3) the evidence conclusively establishes the affirmative defense of official immunity, and (4) it is immune from liability under section 101.056 of the Texas Tort Claims Act. We affirm.

## Background

On February 28, 1989, Jose Trinidad Estrada lost control of his van while driving over an elevated exit ramp of the North Loop East Freeway. The Texas Department of Transportation ("TDOT") had placed a temporary barricade warning device in front of a large section of missing railing. The van struck the barricade device, hurdled an eighteen inch concrete parapet wall, and fell approximately sixty feet to the ground. Estrada and three passengers were killed in the accident, and a fourth passenger sustained debilitating injuries.

Appellees sued the State of Texas alleging alternative theories of recovery including premises liability and the negligent use of tangible personal property. The jury was asked two questions regarding liability: (1)

did the negligence, if any, of the State or Estrada proximately cause the occurrence in question; (2) what percentage of the negligence that caused the occurrence was attributable to the State and what percentage was attributable to Estrada. The charge instructed the jury to answer Question 2 only if it found the occurrence was attributable to the negligence of both the State and Estrada. The jury found the State and Estrada were both negligent and apportioned responsibility for the accident at 50% for each party. The jury awarded damages in the amount of $1,183,402.04, which the trial court reduced to $500,000. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.023 (Vernon 1986). This appeal followed.

## Analysis

### Points of Error Three Through Five

In its third point of error, the State contends the trial court erred in submitting the case under a general negligence charge because the case arises from a premises defect. In its fourth point, the State alleges the trial court erred in refusing to submit its proposed jury question requiring appellees to prove that the State failed to post an adequate warning. In its fifth point, the State contends there was no evidence it failed to warn appellees of the dangerous condition of the highway.

The trial court has great discretion in submitting the jury charge. *See* TEX.R. CIV. P. 277. The questions submitted, however, must control the disposition of the case, be raised by the pleadings and evidence, and properly submit the disputed issues for the jury's deliberation. *See* TEX.R. CIV. P. 278; *Triplex Communications, Inc. v. Riley*, 900 S.W.2d 716, 718 (Tex.1995).

The evidence at trial revealed that eleven months prior to appellees' accident, a truck crashed into the side wall of the exit ramp, knocking out a thirty-seven foot section of the railing. State engineers determined immediate repair of the railing was unnecessary, and the State's highway maintenance crew placed a temporary barricade device in front of the missing railing. This barricade device consisted of several fifty-five gallon metal barrels fastened together by steel cable. The device stretched across the area of the missing railing, was connected to the ramp by steel cable, and was installed in front of the highway's eighteen inch concrete parapet wall. Prior to installing the device, the federal government had determined the steel barrels were hazardous and advised the State to "phase out" their use by August 1989.

The State conceded the barrel device was inadequate to redirect traffic but claimed it was adequate to serve its intended purpose of warning the public of danger. Appellees argued the State misused the barrels device, and their expert witnesses, Randall Dodd and Maurice Bronstad, opined that the device crumpled at impact and acted as a ramp to launch the van over the parapet wall. Bronstad also testified that state employees had misused the barrels by placing them in front of the parapet wall and the missing railing.

After both sides rested, appellees submitted a general negligence charge. The State objected to the charge and asked the court to submit the case under a premises defect theory. The trial court overruled the State's objection and submitted the case under a general negligence charge. The State contends this was error.

Under the doctrine of sovereign immunity, the State is not liable for the negligence of its officers or employees absent constitutional or statutory provision waiving immunity from liability. *See University of Texas Med. Branch v. York*, 871 S.W.2d 175, 177 (Tex.1994). Section 101.021 of the Texas Tort Claims Act ("TTCA") sets forth the extent to which Texas has waived its immunity. Under that section, the State or a governmental unit of the State is liable for "personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." TEX. CIV. PRAC. & REM.CODE ANN. § 101.021(2). Liability for premises defects is implied under section 101.021(2) because such defects arise from a condition existing on real property. *See University of Texas Med. Branch v.*

*Davidson,* 882 S.W.2d 83, 84 (Tex.App.—Houston [14 th Dist.] 1994, no writ).

For claims arising from the "condition or use" of tangible personal property, the standard of care is the same as the "governmental unit would, were it a private person, be liable to the claimant according to Texas law." *Id.* § 101.021(2). In such cases, a general negligence jury charge is proper. *See Texas Dep't. of Transp. v. Henson,* 843 S.W.2d 648 (Tex.App.—Houston [14 th Dist.] 1992, writ denied); *City of Baytown v. Townsend,* 548 S.W.2d 935, 940 (Tex.Civ.App.—Houston [14 th Dist.] 1977, writ ref'd n.r.e.). For claims stemming from a premises defect, the standard of care is limited to the duty a private landowner owes a licensee. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.022; *see also State v. Tennison,* 509 S.W.2d 560, 562 (Tex.1974); *Hawley v. State Dep't. of Highways & Pub. Transp.,* 830 S.W.2d 278 (Tex. App.—Amarillo 1992, no writ). That duty requires a landowner not to injure a licensee through willful, wanton, or grossly negligence conduct, and requires the landowner to use ordinary care to either warn a licensee of, or to make reasonably safe, a dangerous condition of which he is aware and the licensee is not. *See State Dep't. of Highways v. Payne,* 838 S.W.2d 235, 237 (Tex.1992); *Tennison,* 509 S.W.2d at 562. To prevail on a premises defect claim, the plaintiff must obtain jury findings that: (1) the defendant knew or should have known of the defective condition on the premises; (2) the condition posed an unreasonable risk of harm; (3) the defendant failed to exercise reasonable care to reduce or eliminate the risk; and (4) the defendant's failure to use such care proximately caused the plaintiff's injuries. *See Keetch v. Kroger Co.,* 845 S.W.2d 262, 264 (Tex.1992).

The State contends the trial court erred in submitting the case under general negligence law because appellees' claims stem from a premises defect. Appellees argue their injuries resulted from the State's misuse of the barrel warning device, not a defective condition of the highway. Therefore, the issue we must decide is whether appellees' claims arise from a premises defect or a condition or use of tangible personal property.

A premises defect is a defect or dangerous condition arising from a condition on the premises. *See Davidson,* 882 S.W.2d at 85. For example, a negligently waxed floor, slippery algae growth on rocks at the base of stairs, or a security screen permanently attached to an exterior window are all cases involving premises defects. *See, e.g., Tennison,* 509 S.W.2d at 560 (floor); *Blankenship v. County of Galveston,* 775 S.W.2d 439 (Tex. App.—Houston [1 st Dist.] 1989, no writ) (algae on rocks); *Billstrom v. Memorial Med. Ctr.,* 598 S.W.2d 642, 647 (Tex.Civ.App.—Corpus Christi 1980, no writ) (screen). In contrast, injuries caused by a hospital bed with no side rails, portable traffic control devices, or an unattached wall divider arise from the condition or use of tangible personal property. *See, e.g., Overton Memorial Hosp. v. McGuire,* 518 S.W.2d 528 (Tex.1975) (hospital bed); *Henson,* 843 S.W.2d 648 (traffic barrel signs); *Harris Co. v. Dowlearn,* 489 S.W.2d 140 (Tex.Civ.App.—Houston [14 th Dist.] 1972, writ ref'd n.r.e.) (wall divider).

Determining whether the particular object that caused the injury falls into the category of "premises defect" or "use or condition of property" is often a difficult task. However, because the parties have placed the issue squarely before us, it is a determination we must now make. This Court has previously recognized that because the TTCA does not define "premises defect," a common and ordinary meaning should be applied. *See Davidson,* 882 S.W.2d at 85 (citing *Billstrom,* 598 S.W.2d at 646). A "premises" is "a building or part of a building with its grounds or other appurtenances." *Id.* An "appurtenance" is "an article adapted to the use of the property to which it is connected, and which was intended to be a permanent accession to the freehold." *Id.*[1]

The facts of *Henson* are particularly relevant to the present case. *See* 843 S.W.2d at 648. In *Henson,* the plaintiff was injured after his truck collided with two traffic barrel

---

1. In *Davidson,* we concluded an elevator that caused the plaintiff's injuries was an appurtenance to the building because it was an integral part of the building and was permanent in nature. *Davidson,* 882 S.W.2d at 86.

signs on a state highway. *Id.* at 649. At the time the accident occurred, the TDOT was using the barrel signs to demarcate where a lane under construction curved into another lane. The jury found the TDOT was negligent and awarded Henson $885,000 in damages. *Id.* at 650. On appeal, the TDOT contended the trial court erred in submitting the case under a general negligence charge because the plaintiff's claim arose from a premises defect. *Id.* at 652. Finding submission of the general negligence charge was proper, we noted the State used the barrel signs to delineate traffic through a construction area and did not intend for the barrels to be a permanent part of the highway. *Id.* We also noted the barrel signs were moveable, portable, and temporary in nature. *Id.* at 653.

The State argues *Henson* is distinguishable from the case at bar because unlike the barrel signs used in *Henson*, the barrel device used in this case was designed and built according to specifications. The State also emphasizes that it was undisputed that Henson's truck collided with the barrel signs, while there is "conflicting evidence" as to that fact in this case. The State further argues that because the barrel device was attached to the railing by cable, the device was an appurtenance to the premises.

■ In *Henson*, we determined the barrel signs were individual items of tangible personal property because they were moveable, portable, temporary, and were not intended to be a permanent part of the highway. *Id.* The evidence in this case shows the barrel device was installed as a temporary measure and was not intended to be a permanent part

of the highway. It is also undisputed that although attached to the ramp by steel cable, the device was moveable and portable. Based on the similar characteristics between the traffic control devices in *Henson* and the present case, we find *Henson* controlling. We also reject the State's argument that the barrel device was an appurtenance to the highway by virtue of its attachment. The State's own witnesses testified the only reason the barrel device was attached to the highway was to prevent it from moving. We cannot conclude the State's effort to stabilize the device converted it into an appurtenance. Because appellees' claims arise from the negligent use of tangible personal property, the trial court did not err in submitting the case under a general negligence charge.[2] We overrule point of error three.[3] Furthermore, because the State's fourth and fifth points of error presume a premises defect framework, we need not address them.

*Points of Error One & Two*

In its first and second points of error, the State contends the trial court erred in rendering judgment for appellees because there was no evidence to support appellees' "negligent activity" theory of recovery. The State argues that because the case was submitted under a general negligence charge, "Plaintiffs–Appellees were burdened to prove that there was active negligence of the Defendant–State–Appellant that was *contemporaneous* with the accident and injuries." We disagree.

■ The State correctly points out that if an injury is caused by the defendant's

---

2. The State points out that during trial, appellees complained of both the unrepaired condition of the railing (a premises defect) and the use of the barrel warning device (a use of property theory). The State argues that because the case was submitted under a general negligence charge, "there is no way to determine what ground of negligence was found by the jury." However, the State neither objected to the charge on these grounds, nor requested an instruction predicating a finding of liability upon a finding that appellees' injuries resulted from the State's misuse of tangible personal property. The State has therefore waived this complaint. *See* Tex.R. Civ. P. 274, 278; *Yellow Cab & Baggage Co. v. Green*, 154 Tex. 330, 277 S.W.2d 92, 93 (1955).

3. In a supplemental brief, the State cites *State of Texas v. Williams* to support its argument that the trial court erred in submitting the case under a general negligence charge. *See* 940 S.W.2d 583 (Tex.1996). *Williams* does not support the State's position. In *Williams*, the plaintiff was injured after his truck ran over a traffic sign lying face-down on the roadway. The sign was not placed in the street on purpose nor was the State using the sign to direct or control traffic. Thus, unlike the present case, the situation in *Williams* clearly involved a claim based on the condition of the roadway, and a premises defect charge was proper.

negligent activity, and the plaintiff sues under a negligent activity theory of liability, the plaintiff is entitled to a general negligence charge. *See Keetch,* 845 S.W.2d at 264. To recover under such a theory, a plaintiff must prove his injury occurred by or as a contemporaneous result of the activity itself, rather than the condition created by the activity. *See id.* Contrary to the State's assertion, however, appellees neither pled nor argued at trial a negligent activity theory of liability. Appellees' primary theory of liability stemmed from the State's employees' decision to place the barrel warning device in front of the damaged railing.[4] It is well-established that the State or a governmental entity may be held liable when a governmental employee *provides* tangible property that is a contributing factor to the plaintiff's injury. *See, e.g., Robinson v. Cent. Texas MHMR Ctr.,* 780 S.W.2d 169 (Tex.1989) (providing swimming wear that did not include life preserver was "use" of tangible property subjecting State to liability); *Lowe v. Texas Tech Univ.,* 540 S.W.2d 297 (Tex.1976) (providing a uniform without a knee brace was "use" of tangible property subjecting university to liability); *Overton Memorial Hosp. v. McGuire,* 518 S.W.2d 528 (Tex.1975) (providing hospital bed without rails was "use" of tangible property for which a governmental entity may be held liable). In this case, the evidence shows the State provided the barrel warning device that appellees claim was a significant contributing factor in causing the accident. The State's complaint that appellees were "burdened to prove" active negligence on the State's part is without merit.

The dissent would hold that because appellees were not injured by any contemporaneous activity associated with the barrels, a premises defect charge should have been submitted. This, however, ignores the fact that appellees' injuries were caused by the negligent use of tangible personal property and *not* a condition of the premises (*i.e.,* a premises defect). *See Henson,* 843 S.W.2d at 648.[5] We also disagree with the dissent's assertion that, "the choice between a negligence and premises defect charge turns solely on whether the injury results from a contemporaneous human act or a condition of property, regardless of whether the property is real or personal." In our opinion, such an approach is overly broad and, more importantly, does not address those situations where, as here, the injury was not caused by a negligent contemporaneous act or a premises defect.[6] We overrule points of error one and two.

*Points of Error Six & Seven*

In its sixth and seventh points of error, the State contends the trial court erred in entering judgment on the jury's verdict because it is immune from liability under section 101.056 of the TTCA [the "discretionary acts exception"].[7] Specifically,

---

4. Appellees' pleadings contained allegations of negligence based upon section 101.021(2) of the Texas Civil Practice and Remedies Code. To state an actionable claim under section 101.021(2) based upon the misuse of tangible personal property, a plaintiff must allege (1) the property was used or misused by a governmental employee acting within the scope of his employment, and (2) the use or misuse of the property was a contributing factor to the injury. *See Salcedo v. El Paso Hosp. Dist.,* 659 S.W.2d 30, 32–33 (Tex. 1983).

5. The dissent suggests that because *Henson* was decided before *Keetch, Henson* has lost its precedential value. We disagree. Although *Henson* was issued before *Keetch, Keetch* was decided *before* the supreme court denied writ in *Henson.* Thus, if the supreme court considered *Henson* (and the authorities cited therein) to be wrongly decided, it had the opportunity to reverse the case. Because it refused to do so, we believe

*Henson* is still good law and controls the disposition of this case.

6. Under the dissent's reasoning, cases such as *Townsend,* 548 S.W.2d at 935, *Overton,* 518 S.W.2d at 528, and *Dowlearn,* 489 S.W.2d at 140 are no longer viable because in each of those cases, a general negligence charge was held to be properly submitted even though the plaintiff's injury was not caused by contemporaneous negligent activity. We have been unable to find any authority, and the dissent has cited none, that would support such a conclusion.

7. Section 101.056 provides:

This chapter does not apply to a claim based on:
(1) the failure of a governmental unit to perform an act that the unit is not required by law to perform; or
(2) a governmental unity's decision not to perform an act or on its failure to make a decision on the performance or nonperfor-

the State argues that because any negligence on its part arose from the exercise of its discretionary power, it is immune from liability. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.056. The supreme court has not articulated a clear-cut test for determining whether a claim is precluded by section 101.056. The court has, however, held the statute is designed to avoid judicial review of governmental policy decisions. *See State v. Terrell,* 588 S.W.2d 784, 787 (Tex.1979). The court has also made it clear that the exception applies only to claims arising from the *formulation* of policy and does not exempt claims arising from the negligent *implementation* of policy. *See City of Brownsville v. Alvarado,* 897 S.W.2d 750, 754 (Tex. 1995) (citing *City of Waco v. Hester,* 805 S.W.2d 807, 812–13 (Tex.App.—Waco 1990, writ denied) (holding jailers' misuse of tangible personal property constituted negligent implementation of City's formulated inmate-protection policy). Stated differently, actions taken at the planning or policy-making level are immune, whereas actions taken at the subordinate or operational level are not. *Terrell,* 588 S.W.2d at 787–88; *see also Forbus v. City of Denton,* 595 S.W.2d 621, 623 (Tex.Civ.App.—Fort Worth 1980, writ ref'd n.r.e.) (holding the decision *whether* to provide mattresses in jail cells was discretionary while the decision as to *which particular type* of mattress to use in the jail cells was an operational decision subjecting City to potential liability). Consequently, when analyzing the discretionary acts exception, we must determine whether the negligence causing the injury lies in the formulation of policy. *See Alvarado,* 897 S.W.2d at 754. If it does not, the State remains liable for its employees' negligent conduct. *See id.*[8]

█ The State presented evidence that prior to appellees' accident, its engineers had inspected the damaged railing and, in full compliance with the TDOT's formulated policy, decided to warn the public of the damage rather than repair it. We agree the engineers' decision to warn the public of the missing railing rather than repairing the damage was a discretionary act for which the State cannot be held liable. *See id.* However, appellees' primary allegation of negligence did not arise from the engineers' decision to repair or warn. Appellees' primary complaint arose from the maintenance crew's allegedly negligent use of the barrel warning device.

The situation in *Christilles* is similar to the present case. *See Christilles v. Southwest Texas State Univ.,* 639 S.W.2d 38 (Tex. App.—Austin 1982, writ ref'd n.r.e.). In *Christilles,* a University of Southwest Texas State drama student was injured during a dress rehearsal of the play *Cat On A Hot Tin Roof. See id.* at 39. In one scene, Christilles was to fall with a drinking glass in his hand, but was instructed by the director to fall with his palm facing up so the glass would not break. While rehearsing the scene, Christilles lost his balance and tried to break his fall with the hand holding the glass. The glass shattered, lodging a large fragment in Christilles hand. *Id.* Christilles sued the University claiming the director's decision to use the drinking glass was negligent. The evidence at trial showed the director purposely decided to use an actual drinking glass instead of a glass substitute often used in theater productions. After Christilles rested his case, the State moved for a directed verdict claiming it was entitled to governmental immunity under the discretionary acts exception. *Id.* at 40. The trial court granted the State's motion and dismissed the case. The Austin Court of Appeals reversed, holding the director's decision to use the glass was not made pursuant to a formulated policy but was instead the exercise of "professional" or "occupational" discretion for which the University could be held liable. *Id.* at 43. In its analysis, the court noted that Christilles's pleadings alleged the director's *decision to use* the drinking glass was negligent, and Christilles's contention was supported by evidence showing

mance of an act if the law leaves the performance or nonperformance of the act to the discretion of the governmental unit.
TEX CIV. PRAC. & REM.CODE ANN. § 101.056 (Vernon 1986).

8. Of course, a plaintiff must also show the State employee's negligence occurred in the condition or use of some personal or real property. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.021(2)..

the director could have chosen other substitutes. *Id.*

██ Similarly, appellees' primary complaint arose from the maintenance crew's *decision to use* the barrel warning device notwithstanding the availability of alternative traffic control devices.[9] Charles Burks, a TDOT maintenance supervisor, testified the maintenance crew's primary function was to warn the public of danger and "make the area safe." To implement this task, the maintenance crew used the barrel warning device despite the fact that other traffic control devices were available. The State has neither cited, nor have we found any evidence in the record to suggest the maintenance crew placed the barrel device on the exit ramp pursuant to a formulated governmental policy. In fact, Burks' testimony indicates the decision regarding which type of traffic control device to use involved the exercise of "occupational" discretion. *See id.; see also Forbus,* 595 S.W.2d at 623. Because the decision to use the barrel warning device occurred at the operational rather than the policy-making level, the State is not entitled to governmental immunity under section 101.056.[10] We overrule points of error six and seven.

*Points of Error Eight Through Ten*

██ In its ninth and tenth points of error, the State contends the trial court erred in refusing to submit its proposed jury question on the affirmative defense of official immunity.[11] In its eighth point, the State contends the overwhelming weight and preponderance of the evidence established the affirmative defense of official immunity. At the charge conference, the State tendered the following question:

> Do you find by a preponderance of the evidence that the pertinent Highway Department employees are protected by official immunity?

> You are instructed that they are protected by official immunity if, at the time in question pertinent [sic] employees:

> 1) were within their authority, acting in the course and scope of their employment with Texas Department of Transportation;

> 2) the work that they were performing required their personal deliberation, discretion or judgment; and,

> 3) they performed their duties exercising "good faith."

> You are instructed that pertinent Texas Department of Transportation personnel acted with "good faith" unless you find:

> every reasonably prudent TxDOT engineer, acting under the same or similar circumstances, would have known or believed that the need to sooner repair the condition substantially outweighed the utility of using the temporary barricade that was used.

The trial court refused to submit the question to the jury.

██ All parties are entitled to have controlling issues, raised by the pleadings and evidence, submitted to the jury. *See Brown v. Goldstein,* 685 S.W.2d 640, 641 (Tex.1985). A "controlling issue" is one which, if answered favorably to the theory in which it is presented, will sustain a basis for judgment for the proponent of the issue. *See Bernal v. Garrison,* 818 S.W.2d 79, 83 (Tex. App.—Corpus Christi 1991, writ denied); *see also Employers Cas. Co. v. Block,* 744 S.W.2d 940, 944 (Tex.1988) (a controlling issue is one which requires a factual determination to render judgment in the case). If an issue is not controlling, it is immaterial, and the court

---

9. Appellees' highway engineering expert, Maurice Bronstad, testified the TDOT's maintenance crew "had at least two standard barriers [redirective devices] they could have used and almost an infinite number of possibilities of putting in some kind of barrier [to make the area safe]."

10. The issue of whether the pertinent members of the highway maintenance crew were entitled to the affirmative defense of official immunity is not before us.

11. Where an employee possesses official immunity, the governmental entity does not have respondeat superior liability under the Tort Claims Act. *See DeWitt v. Harris County,* 904 S.W.2d 650, 654 (Tex.1995). In this case, the State asserted sovereign immunity, via official immunity, as an affirmative defense and, therefore, had the burden to conclusively prove all the essential elements of this defense. *See Montgomery v. Kennedy,* 669 S.W.2d 309, 310–11 (Tex.1984).

may properly disregard the issue as such. *See, e.g., Spencer v. Eagle Star Ins. Co. of Am.,* 876 S.W.2d 154, 157 (Tex.1994). If, on the other hand, a finding upon the issue could affect the legal significance of the verdict and therefore the judgment, the issue is material and must not be disregarded. *See id.* (citing *C. & R. Transp., Inc. v. Campbell,* 406 S.W.2d 191, 194 (Tex.1966)).

■ We have already determined the controlling issue in the case was not whether the State is liable for its formulated policy of repairing or warning. Appellees' primary theory of recovery stemmed from the State's alleged misuse of the barrel warning device. Consequently, the controlling issue was whether the State's employees misused the barrel device that appellees claimed was a significant contributing factor in causing their injuries. Thus, assuming the jury had answered the State's proposed question in the affirmative, such a finding would not have entitled the State to judgment based on its claim of sovereign immunity. Because the State's requested question did not contain a controlling issue, the trial court did not err in refusing to submit the question. Accordingly, we overrule points of error nine and ten. For the same reasons, we overrule point of error eight.

The judgment of the trial court is affirmed.

EDELMAN, Justice, dissenting.

Although a section of the rail was missing from the elevated ramp in this case, a portion of the raised concrete curb or "parapet wall" remained and provided some protection against vehicles going over the edge of the ramp. Therefore, the primary hazard in this case was not the lack of a railing, warning, or barrier, but, instead, that the barrels, upon impact from a vehicle, flattened down to provide, in effect, a ramp for the vehicle's wheels to roll more readily over the parapet wall, thereby eliminating whatever protective barrier the parapet wall provided. Thus, rather than merely failing to reduce or warn of the danger, the alleged effect of the barrels was to affirmatively increase it.

The State's first point of error argues that the trial court should have submitted the case to the jury under a premises defect theory rather than a general negligence theory. A governmental unit in the State is liable for personal injury or death "caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.021(2) (Vernon 1997). In order to establish liability for a premises defect, an invitee must show that: (1) a condition of the premises created an unreasonable risk of harm to the invitee; (2) the premises owner knew or reasonably should have known of the condition; (3) the owner failed to exercise ordinary care to protect the invitee from danger; and (4) the owner's failure was a proximate cause of injury to the invitee. *See Dallas Mkt. Ctr. Dev. Co. v. Liedeker,* 958 S.W.2d 382, 385 (Tex.1997). These elements also apply to the liability of the State for premises defects. *See State v. Williams,* 940 S.W.2d 583, 584 (Tex.1996); *State Dep't of Highways v. Payne,* 838 S.W.2d 235, 237 (Tex.1992).

In *Keetch,* a supermarket customer slipped and fell on a slippery area of the floor which was allegedly caused by the overspray of a product store employees sprayed on plants to make the leaves shine. *See Keetch v. Kroger, Co.,* 845 S.W.2d 262, 263–64 (Tex.1992). On appeal, the plaintiff complained that the trial court should have submitted the case to the jury on a negligent activity theory as well as a premises defect theory. In rejecting this contention, the Texas Supreme Court said:

> There was no ongoing activity when Keetch was injured. Keetch may have been injured by a *condition* created by the spraying but she was not injured by the *activity* of spraying. At some point, almost every artificial condition can be said to have been created by an activity. We decline to eliminate all distinction between premises conditions and negligent activities. The trial court properly did not submit a negligent activity theory on these facts.

*Id.* at 264 (emphasis added). The Court recently reiterated this distinction:

This is not a negligent-activity case because Olivo alleges that he was injured by thread protectors previously left on the ground, not as a contemporaneous result of someone's negligence. *See Keetch v. Kroger Co.*, 845 S.W.2d 262, 264 (Tex.1992)(holding that recovery on a negligent activity theory requires that the plaintiff be harmed by or as a contemporaneous result of the activity itself); *H.E. Butt Grocery Co. v. Warner*, 845 S.W.2d 258, 259 (Tex.1992)(same). Instead, this is a premises defect case.

*Clayton W. Williams, Jr., Inc. v. Olivo*, 952 S.W.2d 523, 527 (Tex.1997) (also holding that, because premises defect and negligent activity are independent theories of recovery, a simple negligence question, unaccompanied by premises defect elements as instructions or definitions, cannot support recovery in a premises defect case).

In *Henson*, the appellee was injured when his vehicle struck highway barrel warning signs which were alleged to be negligently constructed with nails instead of bolts. *See Texas Dep't of Transp. v. Henson*, 843 S.W.2d 648, 649–50, 652 (Tex.App.—Houston [14th Dist.] 1992, writ denied). This court determined that the jury charge was correctly submitted on a theory of negligence rather than premises defect because: (1) according to the ordinary meaning of "premises," a "premises defect" pertains to land, buildings, and appurtenances which are permanent rather than temporary in nature; and (2) the barrel signs in that case were movable personal property which had only been temporarily placed to guide traffic through a construction area. *See id.* at 652–53.

In the present case, the majority opinion has applied the same real versus personal property distinction to conclude that the highway barrels were not a premises defect because they were movable personal property. Importantly, however, *Henson* and the other cases cited in the majority opinion to support this approach were decided before

*Keetch*. As I read it, *Keetch* states that the choice between a negligence and premises defect charge turns solely on whether the injury results from (a) a contemporaneous human act or (b) a condition of property, regardless whether the property is real or personal.

In this case, as in *Keetch*, the defendant was conducting no activity at the location and time that the plaintiff was injured. Thus, although San Miguel may have been injured by a condition created by the State's previous activity of placing the barrels, he was not injured by any contemporaneous activity by the State. Therefore, I would sustain the State's first point of error and reverse the judgment of the trial court on this basis.

However, the remaining disposition of the case as between (a) addressing the remaining points of error and remanding the case, or (b) rendering judgment is less clear. In *Clayton W. Williams*, after finding that the case should have been submitted on a premises defect rather than negligence charge, the Texas Supreme Court held that, because the plaintiffs failed to secure jury findings on their only viable cause of action, premises defect, they waived that claim and were not entitled to any relief from the defendants. *See* 952 S.W.2d at 530. Therefore, the Court reversed and rendered a take nothing judgment. *See id.*

By contrast, in *Dallas Market Center*, the Court similarly concluded that the liability of one defendant, DMC, should have been submitted on a theory of premises defect rather than negligence. *See* 958 S.W.2d at 385. However, rather than reverse and render a take nothing judgment as to that defendant, as it had in *Clayton W. Williams*, the Court reversed and remanded. *See id.* at 387.[1]

In this case, had the trial court ruled correctly on the State's request for a premises defect charge, San Miguel would have had an opportunity for that issue to be submitted to the jury. Because the trial court's denial of

---

1. In *Dallas Market Center*, before addressing this issue, the opinion concluded that the case must be reversed because the jury charge on *negligence* erroneously held DMC to a higher standard of care than ordinary care. *See* 958 S.W.2d at 384–85. However, following the rationale of

*Clayton W. Williams*, the error in the *negligence* charge would have been immaterial because the plaintiff's *only* viable cause of action was for premises defect, and the plaintiff waived that ground of recovery by failing to secure jury findings on it.

the State's request prevented San Miguel from obtaining a jury finding on premises liability, and because I concur in the majority opinion in overruling the State's remaining points of error, I would remand the case rather than render judgment.