**Affirmed and Memorandum Opinion filed December 21, 2023.**



In The

# Fourteenth Court of Appeals

_____

## NO. 14-22-00674-CV

_____

**WEST HOUSTON LUXURY IMPORTS, INC. D/B/A JAGUAR LAND ROVER WEST HOUSTON, Appellant**

**V.**

**JUSTIN LEIGHTON AND LINZI LEIGHTON, Appellees**

**On Appeal from the County Civil Court at Law No. 1**
**Harris County, Texas**
**Trial Court Cause No. 1136390**

## MEMORANDUM OPINION

In this contract dispute regarding a Land Rover purchase, appellant West Houston Luxury Imports, Inc. d/b/a Jaguar Land Rover West Houston ("West Houston") challenges a take-nothing judgment in favor of the buyers, Justin Leighton and Linzi Leighton. In its first issue, West Houston argues that the trial court reversibly erred by omitting several questions from the jury charge. We overrule this issue because West Houston did not demonstrate that its proposed

questions would have determined controlling issues or were reasonably necessary to enable the jury to render a proper verdict. Second, West Houston contends that the evidence is insufficient to support the jury's finding that the Leightons did not breach the parties' contract. Viewing the record consistent with the applicable standard of review, we conclude there is legally sufficient evidence to support the finding. Finally, West Houston argues that the trial court committed reversible error in the admission of certain evidence. We conclude, however, that the complained-of evidentiary ruling, if error, was not harmful.

We affirm the trial court's judgment.

## Background

The Leightons bought a Mercedes vehicle in Colorado and shipped it to Texas, where they live. Several weeks later, the Leightons purchased a Land Rover at West Houston and provided the Mercedes as a trade-in. After reselling the Mercedes to a third party, James Russ, West Houston realized that the Mercedes had never been titled and thus there was no title to pass on to Russ. The parties presented differing accounts of what occurred and who was at fault.

The Colorado dealership applied to register and title the Mercedes with the Harris County Tax Assessor-Collector's office. The application was returned, however, due to several deficiencies, including an underpayment of sales tax. It is undisputed that the Colorado dealership miscalculated the sales tax owed on the vehicle. The Leightons paid $7,287.82 in sales tax but owed an additional $476.08.

After receiving the tax assessor-collector's letter returning the title application, Justin contacted the tax assessor-collector and said that he was planning on trading in the Mercedes and purchasing a different car. According to

2

Justin, the tax assessor-collector told him that the first person to register and title the Mercedes would be responsible for paying the full amount of sales tax on the Mercedes, and because the Leightons were not applying to title the Mercedes in Texas, they were not responsible for paying the sales tax deficit. Justin communicated this information to the Colorado dealership, which promised to refund the Leightons the sales tax collected on the Mercedes purchase.

Justin later visited West Houston to purchase a Land Rover and spoke with salesman Bojan Secerkadic. According to Justin, he told Secerkadic and several others at the dealership about the tax deficit owed on the Mercedes, which he intended to offer as a trade-in. West Houston allegedly assured Justin that the dealership would pay the sales tax on the Mercedes to obtain title. The Leightons and West Houston agreed on a deal, whereby the Leightons traded in the Mercedes and purchased a new Land Rover. Justin testified that the Leightons would not have purchased the Land Rover at the agreed-upon price but for the fact that they were receiving a refund of the sales tax they paid to the Colorado dealership; he said he accepted less money in trade-in value for the Mercedes than he otherwise would have because of the tax refund. The Leightons signed a Retail Purchase Agreement (the "Agreement"), which included a merger clause providing that no representations were made other than those set forth in the contract. The Agreement also provided that "[a]ny Trade-In vehicle delivered by You to [West Houston] in connection with this transaction shall be accompanied by a title or documents sufficient to enable Us to obtain a title to the Trade-In Vehicle. . . ."

Justin testified that West Houston knew that the Mercedes had never been titled because the car still had paper plates. According to Justin, if a car has not been registered (and thus no permanent plate issued), then it has never been titled. Kolby Wahl, West Houston's general manager, testified that it was common in the

3

industry for a dealership to resell a trade-in before obtaining title, but that it was not common practice for dealers to investigate the title before reselling a trade-in.

The Colorado dealership mailed the Leightons a packet of documents, as well as a refund check for the sales tax they paid. Justin called the Colorado dealership and asked what he should do with the documents. Because the documents contained the Leightons' "personal information," the Colorado dealership told Justin to shred the documents, which he did. The packet of documents included the manufacturer's certificate of origin ("MCO") for the Mercedes. Wahl explained that an MCO is the "equivalent of a title. It's just not issued by a state. It's issued by the manufacturer. So the state will not issue a title without that document."

After West Houston resold the Mercedes to Russ and realized that there was an issue with title, Theresa Brooks from West Houston reached out to Justin and asked him if he had the Mercedes' MCO. He did not. Brooks then asked if Justin would sign some forms to assist the dealership in obtaining title to the Mercedes. Justin agreed to sign the paperwork but also said:

> Prior to signing I will need confirmation in an email and written confirmation that we are not responsible for any money due in regards to signing the title application. Please put a signed statement stating the above request[,] witnessed by a notary in with the paperwork you'd like us to sign.

Neither Brooks nor anyone else from West Houston sent the Leightons any paperwork to sign. West Houston also demanded that the Leightons remit the $7,287.82 refunded by the Colorado dealership. The Leightons did not remit any money to West Houston.

Wahl said he contacted the Colorado dealership, and the title clerk told him, "I talked to Mr. Leighton and he said if you can just send me the check back, I'll

4

handle the taxes because I live by the tax office." In other words, by Wahl's account, the Colorado dealership told him that "Mr. Leighton said he would handle the taxes."

West Houston filed a lawsuit against the Texas Department of Motor Vehicles ("DMV") to obtain a duplicate title for the Mercedes. Russ eventually received the title to the Mercedes 16 to 18 months after purchase.

West Houston then sued the Leightons for breach of contract. West Houston alleged that the Leightons failed to convey title to the Mercedes because they refused to pay the sales tax. As damages, West Houston sought recovery of the sales tax paid on the Mercedes and the attorney's fees expended in the suit against the DMV. The Leightons asserted a counterclaim for fraudulent inducement, alleging that West Houston represented to Justin that the Leightons would not be responsible for any amount of the tax owed due to the Colorado purchase. West Houston denied ever promising Justin that it would be responsible for paying the sales tax on the Mercedes.

The case was tried to a jury, which found that the Leightons did not breach the "Agreement"[1] and that West Houston did not commit fraud. West Houston filed a motion for judgment notwithstanding the verdict and alternative motion for new trial, which the trial court denied. The trial court signed a final take-nothing judgment in the Leightons' favor.

## Analysis

West Houston raises three issues on appeal. First, it argues that the trial court committed reversible error by omitting several questions from the jury charge

---

[1] The "Agreement" meant "all documents executed by the Parties to complete the Defendants' February 13, 2019 purchase of the Land Rover from Jaguar Land Rover West Houston."

over objection. Second, West Houston contends that the verdict against West Houston on its breach-of-contract claim is against the great weight and preponderance of the evidence. Third, West Houston argues that the trial court erred in admitting certain evidence.

## A.    Jury Charge

The trial court submitted a broad-form question regarding West Houston's breach-of-contract claim:

QUESTION NO. 1:

Did Linzi Leighton and/or Justin Leighton fail to comply with the Agreement?

Answer "Yes" or "No" as to each:

Linzi Leighton: _____

Justin Leighton: _____

The jury answered "No" as to each defendant. In its first issue, West Houston complains that the trial court erroneously refused to include in the jury charge several additional questions concerning specific facts regarding the Leightons' alleged breach.[2]

---

[2] The rejected jury questions are these:

a) Did Appellees pay the full amount of the Texas sales tax arising from his purchase of the Mercedes in Colorado?

b) Did Jaguar Land Rover West Houston agree in writing to pay the sales tax arising from Justin Leighton's purchase of the Mercedes from Mercedes-Benz Littleton?

c) Did Jaguar Land Rover West Houston renounce the Disclaimer in the Purchase Agreement waiving reliance on oral representations?

d) Did Appellees provide Jaguar Land Rover West Houston the title for the Mercedes?

e) Did Appellees provide Jaguar Land Rover West Houston the manufacturer's certificate of origin for the Mercedes?

We review a challenge to the trial court's jury charge under an abuse of discretion standard. *Moss v. Waste Mgmt. of Tex., Inc.*, 305 S.W.3d 76, 81 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner, or if it acts without reference to any guiding rules or principles. *Id.* A trial court has wide discretion in submitting instructions and jury questions. *Id.* (citing *Howell Crude Oil Co. v. Donna Ref. Partners, Ltd.*, 928 S.W.2d 100, 110 (Tex. App.—Houston [14th Dist.] 1996, writ denied).

While the charge should obtain fact findings on all theories pleaded and supported by evidence, a trial court is not required to, and should not, confuse the jury by submitting differently worded questions that call for the same factual finding. *VingCard A.S. v. Merrimac Hosp. Sys., Inc.*, 59 S.W.3d 847, 865 (Tex. App.—Fort Worth 2001, pet. denied) (citing *Hyundai Motor Co. v. Rodriguez*, 995 S.W.2d 661, 665-66 (Tex. 1999)). This principle applies to West Houston's proposed questions d), e), and f), which inquired whether appellees provided the Mercedes title or MCO, or otherwise provided all documents sufficient to enable West Houston to secure title. These matters describe specific ways in which West Houston contends appellees failed to comply with the Agreement. But they were subsumed within the broad-form breach question submitted in the charge. *See VingCard*, 59 S.W.3d at 865. When the court has fairly submitted the controlling issues raised by the pleadings and the evidence, the judgment shall not be reversed because of the failure to submit other various phases or different shades of the same question. *See* Tex. R. Civ. P. 278; *Holmes v. J.C. Penney Co.*, 382 S.W.2d

---

f) Did Appellees provide Appellant all documents sufficient to enable Jaguar Land Rover West Houston to obtain a title to the Mercedes in accordance with applicable state law?

g) Was Appellees lack of performance excused?

472, 473-74 (Tex. 1964). Thus, the trial court did not abuse its discretion in refusing to submit these proposed questions. *See Berg v. Wilson*, 353 S.W.3d 166, 179 (Tex. App.—Texarkana 2011, pet. denied) (when broad-form question subsumed issues, trial court did not abuse its discretion in failing to submit separate questions on each issue).

The remaining proposed jury questions about which West Houston complains did not pertain to controlling issues. A controlling issue is one that requires a factual determination to render judgment in the case. *Employers Cas. Co. v. Block*, 744 S.W.2d 940, 944 (Tex. 1988); *see Murphy v. Seabarge, Ltd.*, 868 S.W.2d 929, 934 (Tex. App.—Houston [14th Dist.] 1994, writ denied). If an issue is not controlling, it is immaterial, and the court may properly disregard the issue as such. *State v. San Miguel*, 981 S.W.2d 342, 350-51 (Tex. App.—Houston [14th Dist.] 1998), *rev'd on other grounds sub nom. State v. Miguel*, 2 S.W.3d 249 (Tex. 1999) (citing *Spencer v. Eagle Star Ins. Co. of Am.*, 876 S.W.2d 154, 157 (Tex. 1994)). A jury question also can be considered immaterial when its answer cannot alter the effect of the verdict. *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 752 (Tex. 1995); *Nat'l City Bank of Ind. v. Ortiz*, 401 S.W.3d 867, 883 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (op. on reh'g); *Hernandez v. Atieh*, No. 14-06-00582-CV, 2008 WL 2133193, at *3 (Tex. App.—Houston [14th Dist.] May 20, 2008, no pet.) (mem. op.). When the requested issue is not controlling on a matter required to reach a verdict, a court does not abuse its discretion in declining to submit it. *See America's Favorite Chicken Co. v. Samaras*, 929 S.W.2d 617, 626 (Tex. App.—San Antonio 1996, writ denied).

Proposed questions a), b), and c) are not controlling or material to the question of the Leighton's alleged breach. For example, proposed question a) would have asked whether the Leightons paid the sales tax on the Mercedes. But

8

the Agreement imposed no duty on the Leightons to pay the sales tax. West Houston acknowledges there was no agreement that either party pay sales tax on the Mercedes. Thus, the Leighton's failure to pay the sales tax would not have breached the Agreement, and whether they did or did not pay it is not a controlling issue.

Proposed question g) — whether the Leighton's lack of performance was excused — also pertains to an immaterial or non-controlling issue because the jury found that the Leightons did not breach the Agreement. As explained below, we uphold the judgment based on the jury's findings that the Leightons complied with the Agreement, thus mooting any question of excuse.

We therefore hold that the trial court did not abuse its discretion in refusing West Houston's proposed questions a), b), c), and g). *See America's Favorite Chicken Co.*, 929 S.W.2d at 626.

We overrule West Houston's first issue.

## B.     Sufficiency of the Evidence

In its second issue, West Houston argues that insufficient evidence supports the jury's verdict.[3]

---

[3] West Houston's statement of its second issue is limited to a factual insufficiency challenge. A factual insufficiency challenge to a jury finding must be raised in a timely motion for new trial. Tex. R. Civ. P. 324(b)(2). West Houston filed a timely motion for new trial but did not challenge the jury's findings on factual insufficiency grounds. Therefore, it did not preserve a factual insufficiency issue for appeal. Substantively, however, West Houston also argues that the Leightons' failure to comply with the Agreement was conclusively established, which is a legal-sufficiency complaint. We therefore construe West Houston's brief liberally as challenging the jury's answer to question number one on legal-sufficiency grounds only. *See Est. of Casas*, No. 14-20-00575-CV, 2022 WL 711087, at *3 n.2 (Tex. App.—Houston [14th Dist.] Mar. 10, 2022, no pet.) (mem. op.); *Alexander v. Kent*, 480 S.W.3d 676, 692 (Tex. App.—Fort Worth 2015, no pet.); *Baker v. Skains*, No. 01-11-00501-CV, 2012 WL 2923191, at *5 n.3 (Tex. App.—Houston [1st Dist.] July 12, 2012, no pet.) (mem. op.).

As the plaintiff, West Houston bore the burden of proof on its breach-of-contract claim. *See Vast Constr., LLC v. CTC Contractors, LLC*, 526 S.W.3d 709, 718 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (identifying required elements). When a party challenges the legal sufficiency of the evidence to support an adverse finding on an issue for which it had the burden of proof, that party must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (per curiam). In reviewing such a matter-of-law challenge, we employ a two-part test. We first examine the record for some evidence that supports the finding, while ignoring all evidence to the contrary. *Id.* If there is no evidence to support the finding, we then examine the entire record to determine if the contrary proposition is established as a matter of law. *Id.* The issue should be sustained only if the contrary proposition is conclusively established. *Id.*

We consider the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005). We credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *See id.* at 827. Our task is to determine whether the evidence at trial would enable reasonable and fair-minded people to find the facts at issue. *See id.* As long as the evidence at trial "would enable reasonable and fair-minded people to differ in their conclusions," we will not substitute our judgment for that of the factfinder. *See id.* The factfinder is the only judge of witness credibility and the weight afforded to testimony. *See id.*

Applying the applicable standard of review and deferring to the jury's right to resolve credibility issues, we conclude there is some evidence supporting the jury's finding that the Leightons did not breach the Agreement. West Houston

presents in essence two main arguments against the finding. First, West Houston contends that the Leightons failed to comply because they did not pay the Texas sales tax on the Mercedes. As explained, however, the Agreement did not obligate the Leightons to do so. Based on the terms of the Agreement coupled with West Houston's acknowledgement that the parties did not reach any agreement as to who was responsible for paying the sales tax, the jury reasonably could have found that the Leightons did not breach the Agreement by failing to pay the sales tax on the Mercedes.

Second, West Houston contends that the Leightons failed to comply with the Agreement because they provided neither title to the Mercedes nor all documents necessary to enable West Houston to obtain title. But the Leightons agreed to sign the documents West Houston said it needed to obtain the title; they were unwilling to do so only if West Houston demanded that they remit the sales tax refund. This is legally sufficient evidence to show that the Leightons did not materially fail to comply with paragraph five of the Agreement. *See Sasson v. Lipskey*, No. 14-22-00695-CV, 2023 WL 5022442, at *5-7 (Tex. App.—Houston [14th Dist.] Aug. 8, 2023, no pet.) (mem. op.) (holding evidence sufficient to support finding of no breach when defendants tendered performance under contract). The jury could have rejected West Houston's theory because Justin testified that he was unaware of receiving the MCO from the Colorado dealership and that, in any event, he was willing to sign additional documents to facilitate West Houston's application for title. The jury reasonably could have found that the Leightons did not breach the Agreement by failing to provide documents sufficient to enable West Houston to obtain title to the Mercedes.

Thus, there is at least some evidence that the jury could have credited in finding that the Leightons did not breach the Agreement. We conclude that there is

legally sufficient evidence to support the jury's breach finding. *See Dow Chem.*, 46 S.W.3d at 241 (we examine the record for evidence that supports the finding, while ignoring all evidence to the contrary).

We overrule West Houston's second issue.

## C.    Evidentiary Ruling

In its third issue, West Houston argues that the Leightons' counsel attempted to confuse and prejudice the jury by asking Wahl if there were viable alternative means for the dealership to obtain a title for the Mercedes, other than instituting a lawsuit against the DMV, such as through a tax hearing or securing a bonded title.[4] West Houston objected to the question on relevance grounds. When asked about relevance, the Leightons' counsel answered, "Your Honor, it's our position that the dealership caused its damages, that they had alternatives which they could have mitigated."

The line of questioning regarding West Houston's ability to obtain a replacement title goes to its damages, not whether the Leightons breached the Agreement. Because the jury found that the Leightons did not breach the parties' contract, a finding we do not disturb on appeal, any evidence regarding West Houston's damages is immaterial. For this reason, we need not decide whether the trial court erred in allowing the line of questioning; even if error, the admission of this evidence was not harmful. *See Yeh v. David J. MacDougall, D.O., P.A.*, No. 01-06-00509-CV, 2008 WL 183712, at *5 (Tex. App.—Houston [1st Dist.] Jan. 17, 2008, no pet.) (mem. op.) ("Because we find the evidence to be both legally and factually sufficient to support the jury's finding that NAH did not breach the contract, Yeh is not entitled to any damages on that issue."); *see also Replacement*

---

[4] Wahl testified he was not aware of using a tax hearing to secure a vehicle title, but he was aware of a bonded title.

12

*Rent-A-Car, Inc. v. JCD, Inc.*, No. 05-92-00379-CV, 1992 WL 379424, at *2 (Tex. App.—Dallas Dec. 22, 1992, no writ) (mem. op.).

We overrule West Houston's third issue.

## Conclusion

Having overruled West Houston's three issues, we affirm the trial court's judgment.


/s/    Kevin Jewell
        Justice


Panel consists of Justices Jewell, Spain, and Wilson.